Mary T. Smith v. Commissioner.
Smith v. Commissioner
Docket No. 3372.
United States Tax Court
1945 Tax Ct. Memo LEXIS 222; 4 T.C.M. (CCH) 440; T.C.M. (RIA) 45149; April 24, 1945
*222 Lewis C. Murtaugh, Esq., and R. W. Burgeson, Esq., 231 S. LaSalle St., Chicago, Ill., for the petitioner. Charles J. Munz, Jr., Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion Respondent has determined a deficiency in petitioner's income tax for the year 1940 in the sum of $7,985.03. This deficiency arises by reason of respondent's inclusion in petitioner's taxable income for that year of the sum of $21,750 which respondent determined to be the fair market value of two notes in the respective amounts of $13,750 and $8,000 received during the taxable year from the Harvester Office Co. by the Thomas Smith Trust, the entire net income of which was distributable annually to petitioner. Respondent held that those notes were received in payment of rent and constituted income to the amount of their fair market value, which was, so respondent determined, the face amount thereof. Findings of Fact Petitioner is an individual residing in Chicago, Ill., and filed her return for the taxable year with the collector of internal revenue for the first district of Illinois. She regularly reported her income on a cash receipts and disbursements basis, and *223 did so during the taxable year. Petitioner is, and was, the life beneficiary of the Thomas Smith Trust Estate (hereinafter called the trust) which owned certain real estate located in the City of Chicago, Ill. This property was subject to a leasehold estate created by an indenture of lease executed by Thomas Smith, the deceased settlor of the trust, which leased this property for a term of 198 years from May 31, 1906. A 15-story brick office building was erected upon the leasehold estate in this property in 1907. In 1908 this leasehold was assigned to the Harvester Office Building and constituted the sole asset of that corporation. The premises are commonly known as 600 South Michigan Avenue, Chicago, Ill.
The building was rented to the International Harvester Co. under a lease which terminated on October 15, 1937. Upon the expiration of that lease the Innternational Harvester Co. vacated the premises leaving approximately 12 1/2 floors of the 15 floors of the building unoccupied. Thereupon the Harvester Office Co. which owned the leasehold estate in the property was forced to remodel, restore and modernize the building in order to obtain prospective tenants. Improvements made *224 by the International Harvester Co. during its occupancy had to be scrapped and it was necessary to divide up the building into smaller quarters in order to rent the premises to a large number of tenants rather than to one company. It was also necessary to modernize and rehabilitate the plumbing, heating, electrical wiring and elevators in the building. The expenses of this work soon exhausted the cash of the Harvester Office Co., and there were soon unpaid material and labor bills in considerable amounts, together with unpaid ground rent and general taxes. The Harvester Office Co. endeavored to obtain loans from banks and insurance companies with which to pay these bills, including the rent and taxes. However, it was unable to obtain these loans from financial institutions, since its only asset was the leasehold. It was finally able to negotiate loans in the total amount of $74,544.47 from one Hugh W. McCullouch which were secured by two mortgages upon its leasehold. There remained unpaid accounts in considerable amounts including general real estate taxes for the years 1937 to 1939 in the total amount of $56,108.39, besides penalties. These taxes were a lien upon the real estate and *225 some of the unpaid labor and material bills were potential liens upon the real estate. In 1938 the Harvester Office Co. applied for a loan to The RFCMortgage Company, a subsidiary of the Reconstruction Finance Corporation, which company made loans in cases of distress and of inability to secure loans elsewhere. The first application for such loan was declined but a subsequent application was eventually granted after protracted negotiations. One of the conditions proposed by The RFC Mortgage Co. as a prerequisite to granting the loan was a reduction in the cash payments to be made as rent by the Harvester Office Co. to the trust from $20,000 per year to $12,000 per year, and the subordination and deferment of the unpaid portion of the rent ($8,000 per annum) until the loan of The RFC Mortgage Co. was paid in full. Upon the satisfaction of the requirements and conditions of The RFC Mortgage Co. the latter was willing to make a loan of $160,000, plus $15,000 to be advanced later. It considered the leasehold interest of the Harvester Office Co. to have a value at the time it granted the loan of $265,000 if there was a reduction during the period of the loan of cash payments of the ground *226 rent from $20,000 per year to $12,000 per year. If there was no such reduction, The Mortgage Co. considered the leasehold to have no value and it would have been unwilling to make any loan. On May 10, 1940 the directors of the Harvester Office Co. met and the minutes of that meeting read in part as follows: "The Chairman stated that in order to obtain the loan from The RFC Mortgage Company, it is necessary to procure from the lessor Modification of and Amendment and Supplement to the leasehold estate owned by the company which will, in effect, subordinate part of the ground rent both past due and to be due in the future until the maturity of the proposed first mortgage loan to the rights of The RFC Mortgage Company as mortgagee or owners of said premises. The form and contents of the proposed Modification of and Amendment and Supplement to Lease as theretofore approved by The RFC Mortgage Company and the representatives of the lessor was discussed by the Directors and by the affirmative votes of The Directors present at the meeting, the following resolution was adopted: "RESOLVED, that the President and Secretary be authorized to execute on behalf of this company a Modification *227 of and Amendment and Supplement to Lease in the form heretofore approved by The RFC Mortgage Company and representatives of the lessor of the premises at 600 South Michigan Avenue, Chicago, Illinois, in effect subordinating part of the ground rent to the interests of The RFC Mortgage Company as mortgages and owner of the premises, and containing other provisions respecting the rent due, the repair and reconstruction of the building in case of loss and damage, and respecting other details deemed essential for the protection of The RFC Mortgage Company, and the harmonizing of the interests of The RFC Mortgage Company and the lessor and of this company. "The Chairman further stated that in connection with the Modification of and Amendment and Supplement to Lease, it will be necessary to issue to the lessor the notes of this company secured by a second mortgage trust deed under which from time to time the notes of this company would be issued in payment and satisfaction of the rent agreed to be subordinated to the interests of The RFC Mortgage Company. "A discussion was thereupon had concerning this matter, and on motion regularly made and seconded by the affirmative vote of the Directors *228 of the company present at the meeting the following resolution was adopted: "RESOLVED, that the Board of Directors of this company propose and recommend to the stockholders of this company that this company execute and deliver in form satisfactory to the lessor the following instruments: "(a) A note in the principal sum of $13,750.00 representing the payment of part of the ground rent not paid in cash for the period from November 30, 1937 to February 27, 1939 and that it be authorized to execute notes from time to time in accordance with said Modification of and Amendment and Supplement to Lease in payment and satisfaction of ground rent not paid in cash. "(b) A second mortgage securing the said notes to be issued covering a certain parcel of leasehold real estate above described owned by this company and commonly known as 600 South Michigan Avenue, Chicago, Illinois. "(c) All such other documents, papers, agreements, contracts, notes, mortgages, assignments of rents, assignments, or other instruments as may be required by the lessor." * * * * *
The trustees of the trust agreed to a Modification of the lease and such modification was authorized and directed by the Circuit *229 Court of Cook County, Illinois in an action brought in that Court which requested, among other things, such authorization. This authority was granted on May 23, 1940. On the same date the trustees of the trust and the Harvester Office Co. executed a "Modification of and Amendment and Supplement to Lease", the pertinent provisions thereof being as follows: "NOW, THEREFORE, to induce THE RFC MORTGAGE COMPANY to make a loan to the Party of the Second Part in an amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and not in excess of ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00), and in consideration of the promise of the Party of the Second Part to comply with the requirements of THE RFC MORTGAGE COMPANY and to procure such a loan, if it is possible to do so, and in consideration of the procuring of such a loan, and in consideration of the undertaking and agreements of each of the Parties hereto as hereinafter set forth, the Parties hereto hereby covenant and agree that said Lease is hereby modified, amended and supplemented to provide as follows: "1. The Party of the Second Part has paid to the Parties of the First Part the sum of ELEVEN THOUSAND TWO HUNDRED *230 AND FIFTY DOLLARS ($11,250.00) as part payment of the rental under the Lease for the period from November 30, 1937 to February 27, 1939, inclusive. The party of the Second Part shall deliver to the Parties of the First Part a note executed as of February 27, 1939, in the principal sum of THIRTEEN THOUSAND SEVEN HUNDRED FIFTY DOLLARS ($13,750.00) due TEN (10) years after date, bearing interest at the rate of FOUR AND ONE QUARTER PER CENT (4 1/4%) per annum from date, payable seminnually on the 27th day of August and on the 27th day of February of each year, which note is to be secured by Second Mortgage Trust Deed as hereinafter described, conveying said Leasehold Estate. Said note shall be accepted by the Parties of the First Part in full payment, satisfaction and discharge of the balance of the rent for said period from November 30, 1937 to February 27, 1939. "For the rent due and to become due for the period from February 28, 1939 to August 30, 1949, inclusive, the Party of the Second Part shall pay monthly the sum of ONE THOUSAND DOLLARS ($1,000.00) in cash on the last day of each month, beginning February 28, 1939. On the 27th day of February of each year, commencing with February 27, 1940 and *231 to and including February 27, 1949, the Party of the Second Part shall execute and deliver to the Parties of the First Part in full payment and satisfaction of the balance of the rent for the TWELVE (12) months preceding each said 27th day of February as stipulated in the Lease, a note dated February 27th of that year in the principal amount of EIGHT THOUSAND DOLLARS ($8,000.00), due TEN (10) years after its date; and on the 30th day of August, 1949 the Party of the Second Part shall execute and deliver to the Parties of the First Part in full payment and satisfaction of the rent for the preceding SIX (6) months as stipulated in the Lease, a note dated August 30, 1949 in the principal amount of FOUR THOUSAND DOLLARS ($4,000.00) due TEN (10) years after its date, said notes to be secured by the Second Mortgage Trust Deed above mentioned and hereinafter described, and to bear interest at the rate of FOUR AND ONE QUARTER PER CENT (4 1/4%) per annum from date, payable semi-annually on the 27th day of August and on the 27th day of February of each year. "The Party of the Second Part to secure the notes to be delivered to the Parties of the First Part as provided for in paragraph 1 of *232 this agreement, shall deliver to the Parties of the First Part a Second Mortgage Trust Deed conveying the Leasehold Estate of the Party of the Second Part, except the last day of the term thereof, to the CHICAGO TITLE AND TRUST COMPANY as Trustee. Said Trust Deed shall be expressly subject to a first mortgage conveying the Leasehold Estate to THE RFC MORTGAGE COMPANY to secure a loan to the Party of the Second Part in the amount in excess of ONE HUNDRED THOUSAND DOLLARS ($100,000.00) and not in excess of ONE HUNDRED SEVENTY FIVE THOUSAND DOLLARS ($175,000.00), and to such other objections and exceptions to title as said first mortgage is subject, which condition of title shall be sufficiently established by a letter of opinion of the CHICAGO TITLE AND TRUST COMPANY. The from of Trust Deed to be delivered by the Party of the Second Part has been heretofore approved by the Parties of the First Part. "If the Party of the Second Part is not in default in the payment of that portion of the rent to be paid in cash, as provided in paragraph 1 of this agreement, the Parties of the First Part agree to accept the notes as described in paragraph 1 of this agreement in full payment, satisfaction *233 and discharge of the balance of the rent for the periods for which said notes are tendered from time to time as provided in paragraph 1 of this agreement, without any reexamination of the title to the Leasehold Estate and despite the existence of any and all liens against the Leasehold Estate at the times said notes are tendered, which have attached to the Leasehold Estate subsequent to the date of the recording of the Second Mortgage Trust Deed described in paragraph 2 hereof, and which are or may be superior to the lien of said Trust Deed insofar as it is security for the notes so tendered. Said notes shall be certified by the Trustee under said Trust Deed as secured thereby." * * * * *
On July 22, 1940 The RFC Mortgage Company loaned to the Harvester Office Co. $175,000, and received from the Harvester Office Co. as security therefor a mortgage of its leasehold interest in the property here involved. The loan was to be repaid in installments of $1,825 per month with the balance to be paid on the first day of March, 1949. With the proceeds of this loan the Harvester Office Co. paid its debts incurred for labor, material and taxes, and also paid the amounts due to Hugh W. McCullouch, *234 with the exception of $32,000 remaining due upon the later obligations. The company's 5-year note in that amount was given to McCulloch which was secured by a third mortgage trust deed on the leasehold junior to the mortgage held by The RFC Mortgage Co., and the mortgage deed of trust securing the notes given and to be given to the trustees of the Thomas Smith Trust Estate. The two mortgages already given McCulloch were accordingly satisfied. The mortgage deed of trust executed by the Harvester Office Co. as security for the notes given and to be given to the trust was executed as of February 27, 1939 and conformed in general to the provisions of the "Modification of and Amendment to Supplement of Lease" which we have heretofore set forth. Two notes were executed by the Harvester Office Co. (the first as of February 27, 1939 and the second as of February 27, 1940) in the respective amounts of $11,250 and $13,750, and, except for dates and amounts, were the same and read as follows: * * * * *
"Ten (10) years after date for value received the undersigned promises to pay to BEARER the Principal Sum of Thirteen Thousand Seven Hundred Fifty Dollars, with interest thereon until *235 the maturity hereof at the rate of 4 1/4 per centum per annum payable on the 27th day of August and of February in each year, and with interest after maturity until paid at the rate of seven per cent per annum; and the said payments of both principal and interest are to be made at such banking house or trust company in the City of ChicagoIllinois, as the legal holder of this principal note may, from time to time, in writing appoint, and in the absence of such appointment, then at the office of Edward A. Bern in said City. "The payment of this note is secured by trust deed bearing even date herewith, to Chicago Title and Trust Company, Trustee, on real estate in the County of Cook, Illinois, and it is agreed that in case of default for three days in the payment of any installment of interest on this note or in the performance of any other agreement contained in said trust deed, then, at the election of the legal holder hereof (which election may be made at any time after the expiration of said three days, without notice), the principal sum hereof, together with accrued interest thereon, shall at once become due and payable at the place of payment aforesaid. "All parties hereto *236 severally waive presentment for payment, notice of dishonor, protest and notice of protest." * * * * *
These notes had stamped across their face the following: "This note is secured by a junior mortgage. This is a leasehold note and is secondary to a lien on the fee." Upon the reverse side of these notes appear the following: "Issued subject to and in accordance with the provisions of an instrument dated May 23, 1940 and recorded in the Office of the Recorder of Deeds of Cook County, Illinois, on June 5, 1940 as Document No. 12493161 by and between Mary T. Smith and Emmet L. Richardson as Trustees under the Last Will and Testament of Thomas Smith, Deceased and Harvestor Office Company. "Ninety days notice of an intention to commence any action against Mortgagor shall be given The RFC Mortgage Company its successors or assigns except that such notice need not be given if legal action by the Lessor or the holder of any prior encumbrance is pending. Mortgagor may pay $1,000 or more upon any of the notes issued hereunder upon any semiannual interest payment date." These notes were ultimately received by petitioner who still has them. They were not paid during the taxable year *237 and have not yet been paid. The Harvester Office Co. keeps its books and files its tax returns upon an accrual basis of accounting, and deducted on account of rent in its income tax return for the year 1940 the sum of $20,000. The Thomas Smith Trust Estate, as well as petitioner, kept its books and filed its income tax return for the taxable year upon the cash basis and neither included in its or her income tax return for the taxable year any amount on account of the receipt of the notes above referred to. The notes here in question had no fair market value during the taxable year. Opinion KERN, Judge: Although we are inclined to agree with the respondent that the notes here in question were given to the Trust in payment of that part of the rent called for under its lease which was not paid in cash, we are of the opinion that under all of the facts and circumstances shown in the record the notes in question had no fair market value during the taxable year and should not be considered as equivalent of cash. See Mainard E. Crosby, 14 B.T.A. 980. Decision will be entered for the petitioner.